MATHESON, Circuit Judge,
concurring.
I agree we should affirm the district court’s decisions to dismiss the Plaintiffs’ familial association claim and to deny Defendant Gillen’s statute of limitations defense. I also agree we should reverse and remand on the danger-creation claim because Ms. Gillen’s failure to help BIC based on her alleged longstanding hatred of the Crosettos and in the face of substantial child abuse evidence could shock the conscience.
We need not address whether Ms. Gillen’s intentional inaction constitutes “affirmative conduct” as that term is used in danger-creation jurisprudence. I further do not think existing law clearly establishes that such intentional inaction constitutes “affirmative conduct.”
In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that state actors who “played no part in the[ ] creation” of danger to a plaintiff, and who did nothing to “render him any more vulnerable” to danger, were not liable under the Due Process Clause for acts of private violence. Id. at 201, 109 S.Ct. 998. Given this limitation, a plaintiff may establish a substantive due process claim under a danger-creation theory by proving the following elements:
(1) the charged state entity and the charged individual actors created the danger or increased plaintiffs vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant’s] conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.
Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir.2003) (quotations omitted).
The parties vigorously contest the first element, but the district court chose to skip elements one through five and rest its summary judgment ruling on element six — whether Ms. Gillen’s conduct shocks the conscience.
It is not clear whether the district court assumed, without deciding, that elements one through five could be proved, or thought it could simply bypass those elements as long as addressing element six would resolve the summary judgment motion. The court recognized that the Plaintiffs must show that “affirmative acts created or increased the danger to BIC,” Dist. Ct. Op. at 10; that “defendant’s overall conduct must be decidedly affirmative,” id. at 20; and that “little affirmative conduct appears,” id. But it nonetheless explicitly relied on element six — failure to show that the defendant’s conduct shocks the conscience — to grant summary judgment to Ms. Gillen.
Although affirmative conduct is “a necessary precondition” of a danger-creation claim, Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d 909, 925 (10th Cir.2012), the *1193 shoeks-the-conseience part of such a claim concerns the defendant’s “conduct as a whole,” Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir.1995). This includes both action and inaction. See Currier v. Doran, 242 F.3d 905, 920 (10th Cir.2001) (stating that a social worker’s failure to act could be conscience-shocking under a danger-creation theory). Viewed in the light most favorable to the Plaintiffs, Ms. Gillen’s refusal to accept evidence from the Crosettos that BIC was being abused and her refusal to help BIC based on her alleged longstanding hatred of the Crosettos is sufficient for Plaintiffs to withstand summary judgment on the shocks-the-conscience element.
I agree with the majority that remanding this case will allow the parties and the district court to address whether summary judgment should be granted based on the other five elements of the danger-creation claim.
The majority addresses “whether Ms. Gillen purposefully, maliciously, and intentionally failed to act — therefore placing BIC and CSC in harm’s way.” Maj. Op. at 1187. It concludes that our precedent clearly establishes that such inaction constitutes affirmative conduct that exposed Ms. Gillen to danger-creation liability. See id. at 1190. Because this question goes to element one of the Plaintiffs’ danger-creation claim, and because the district court based its ruling only on element six, I would not address this issue.
In addition, I am not convinced that clearly established law holds that such intentional inaction constitutes affirmative conduct that would defeat a qualified immunity defense. We have said that “[i]n-action by the state in the face of a known danger is not enough to trigger the obligation” to protect a plaintiff under a danger-creation theory, Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d 991, 995 (10th Cir.1994), because inaction does not change the “status quo” and expose the plaintiff to acts of private violence, see Currier, 242 F.3d at 924. It is thus not clearly established that inaction, even if intentional and malicious, constitutes “affirmative conduct” as that term is used in our danger-creation jurisprudence.